The next case today is HealthproMed Foundation, Inc. et al. v. Dept. of Health And Human Services et al. Appeal No. 171731, and Atlantic Medical Center, Inc. et al. and Dept. of Health of Puerto Rico et al. Appeal No. 171812, Attorney Bacon. Thank you, and good morning. Nicole Bacon on behalf of Appellants in Case No. 17-1812. I would like to reserve two minutes of my time for rebuttal. Yes, you may have it. Thank you. Your Honor, as of today, the Commonwealth of Puerto Rico has never paid appellants, health centers, in a manner consistent with the Medicaid statute. This court should reverse the district court's decision because it permits further noncompliance with the Medicaid statute, and it's contrary to both its own prior decisions as well as this court's decisions with respect to compliance with the Medicaid statute. There's a forward-looking 2010 compulsory injunction requiring the Commonwealth of Puerto Rico to comply with 42 U.S.C. 1396-ADB, and that statute has two very important components. First, as this court has recognized, there is a formula for calculating the payment amounts due to the health centers for the services provided to Medicaid beneficiaries. Second, there's a timing component  with the statute as well as when there should be a time for the adjustment to the payment rate, and that the timing for payment is no less frequently than every four months, and the adjustments to the rate have to be annually for the index factor for the Medicaid Economic Index, or the MEI, as well as adjustments for changes in scope of services if there are any. There's no dispute that there have been changes in scope of services for appellants since the base rates were set, and for all of the rates, the payment rates, they are used data, cost data from 1999 and 2000 or 2006 to 2007. Everyone acknowledges that those cost, the cost data and the payment data are out of date and stale. The Commonwealth acknowledges that the health centers were due rate adjustments for the entire period, and there's no dispute of fact as to that. Nevertheless, the Commonwealth has asked that the district court and the district court has permitted the payment rates not to be adjusted until 2017, leaving the remaining portion of the period in which we are to calculate the proper payment 2014, 2015, and 2016 without the statutory required adjustments to the rates, in light of the factual findings of the court. In addition, the court allows for a 3% variance in the rate, despite the fact that the statute requires that the health centers be paid 100% of their costs for providing services to the Medicaid beneficiaries. So, in addition to the statute, as well as the injunction, the Puerto Rico, the Commonwealth of Puerto Rico's Medicaid system also basically makes an agreement with the federal government each time it draws down federal funds from the Medicaid program. And part of those terms and conditions in that agreement is that they pay the health centers in accordance with the statute. And that's that requirement. I have just two questions. On the timing point, where you want to go back to 2014, is the logic of your position, what is the stopping point for how far back you would go? Well, the court has required that the parties reconcile the payments, starting with the fourth quarter of 2014, basically because the difficulty in obtaining data to actually fully reconcile the full payments under the injunction. And so, the injunction starts in 2010. And did you give, is there evidence that you presented the data that would be relevant to 2014, as opposed to 2015 and 2016 below? So, there's no dispute in the facts in terms of the change in scope of services. So, the rates were based on cost data from 1999 and 2000 for some centers and for other centers 2006 and 2007. So, there's no dispute that even with just the changes in the Puerto Rico Medicaid system, the health centers were required to change their scope of services from that time. So, really, the full period from the time from once we even actually started with the injunction, the rates started out of date. That's what I'm saying is that for purposes of reviewing for abuse of discretion, doesn't the district court have some flexibility about how far back it's going to go to rearrange things and how much of a showing was made, at what time with respect to rearranging things? And so, just in terms of deference, a decision not to set it back to 2014 seems to have some force to me. The court does not have deference to change the Medicaid statutory formula. The court issued an order in 2010 saying that the commonwealth had to make payments consistent with the formula. But you're seeking a modification of that, no? No, we're not. We're actually asking that there be no modification. Five minutes remaining. Counsel, is it your position that the statute you rely upon talks about, I don't have the exact wording, sort of 100% of whatever the average cost determinations are? I mean, your position seems to be we finally have, actually have an agreement on what the basing formula should be and so forth. And now that we have an agreement, we should get the application of that all the way back to that fourth quarter with respect to that issue based on the statute. There is no discretion. That seems to be, I understand your argument there. Once we figure out what the numbers are, we get 100% of that. There seems to be an agreement on the reconciliation period that it goes back no further than that last quarter in 2014. Is that why you say there's no discretion because we get 100%? Is that your argument? In part. So how you determine what 100% that the statute says there's a formula that every year, the Commonwealth should look at whether or not there has been a change in the scope of services of the health centers. There's no dispute that there have been changes. So starting in 2014, there should be an adjustment to the rates that were initially set using 1999 and 2000 data or 2006 and 2007 data. So that information is available. That is how the statute requires that we be paid. And I think. Counsel, I tended to view the case as Judge Lopez has viewed it. So you presented the data to the special master as to the period from the fourth quarter of 2014 on. And once various disputes were worked out, what you're looking for is 100% of the payment due as to the rebased rates from 2014 through the next two year period. And you say neither the master nor the district court had any discretion under the statute to just suddenly say, no, you don't get those payments because everything essentially had been worked out as to what the correct payment figures would be. Is that correct? In large part. So we have not actually begun the process of calculating the amount due for the special master. What he did make findings of was that there have been sufficient changes in scope of services to warrant the adjustment to the rates. The court ordered based on its decision that it would only apply adjustments to the rates in 2017. The calculations for the rates used 2016 and 2017 data for those calculations. The parties could go back to apply adjusted rates to 2014 in a couple of different ways, just as we've done in the past. We could either use the 2012 and 2013 data to calculate the rates, which is very readily available and reported to the federal agency in compliance with our client's obligations under the grant. Or we could apply what we call the reverse MEI and reverse inflation factor to the rates that have already been calculated through the special master's process. So in any event, there's no expression as to whether or not there's an adjustment in rates once there's a finding that there have been changes in scope of services, which is what the Commonwealth does not dispute and the court has found. Did you have the information presented to the special master to do the calculations starting in 2014 yet or not? We have not done that. That's what I'm saying. Can you object yet to the decision to set it at 2017 and say you have to go back to 2014 when you haven't yet given them the information with respect to 2014? Maybe you can do that once you give it to them, but it's odd to rely on data that post-dates 2014 to get an order for 2014 recalculation. He doesn't have the data to do it yet. What we're asking for is that the court reverse the decision that there would be no adjustment for the 2014 period, which is what the current order is. But that's based on my understanding. That was based on because the showing for supporting the recalculation on 2014 would be dependent on data that was never presented. So that puts the district court in a bit of a bind. Is that wrong? I think that's incorrect. So the data is available. The reason that we calculated the rates using 2015 and 2016 data was a consequence of the erroneous finding that the rates only be adjusted for 2017. The court could have said use 2012 and 2013 data to calculate rates for 2014. So we're asking for a ruling that there be rate adjustments, but then the district court can make those adjustments. I have a point. I had a jurisdictional question I wanted to ask you as well. Before we get there, I understand your view of the district court order as precluding you from presenting the data as to the 2014 fourth quarter for the next two years, although the basic formula questions have been dealt with because of a statement, in essence, that you're simply not going to be paid for those two years. You want that order removed so that you can present the data for the final calculations, correct? If I could just clarify. So we're arguing about a portion of the formula, so the PPS rates. OK, fine. I understand. Now, Judge Barron has a jurisdictional question, and then I have a question about the stay. Yeah, well, that's my question. The jurisdictional question is about the stay. I don't know, Judge Lopez, did you have a question on the merits? It looked like you were about to ask. So before I get into this. Well, I just, I do have a question. Please go ahead. I can ask it at the end. Please go ahead. OK, well, the question, the jurisdictional question relates to the stay in the following respect. Everybody seems to be in agreement, both in this case and the next one, that the orders at issue from the district court were issued after the stay took effect. The argument you seem to make to us is that there can be a retroactive listing of the stay, and everybody seems to agree that there is a mechanism for retroactively listing the stay. Which court do you think can lift that stay retroactively? So I think our argument, in part, is that there could be retroactive lifting of the stay if the court deemed that to be necessary. But the order that's really in question here is a 2010 order. And so this, the 2017 order, is really just implementing that 2010 order. Yeah, but you're a little bit late to be challenging the 2010 order. So if we want it to be the 2010 order, yeah, go ahead. I think she's relying on it, not challenging it. I'm saying it was never subject to the stay. But I'm saying the thing that was bringing us here is the action about the setting of the 2017 date. Isn't that the order you want wiped away? Essentially. And that postdates the stay. That's correct. So with respect to the stay, there are two things. So one, we have agreed to lift the stay, the parties have agreed to lift the stay, for the purpose of this proceeding going forward. We also have a pending motion to lift the stay before the Title III court. I don't think that the listing of the stay would preclude, or I'm sorry, I don't think that the stay itself would preclude this court from making a legal determination as to when the rate adjustment should apply. And that should be consistent with the 2010 order, which there has been no change to. You still have not answered my question. I'm sorry. And it's not, just maybe I wasn't clear about it. But the question that I'm interested in is, if I assume that the order that you have been saying is erroneous, was issued after the stay had been entered because of our migrant health decision, one possibility is that stay can be retroactively lifted, and then there was no problem. Which court can retroactively lift it in your view? That's correct. So if the court being- Which court can retroactively lift it in your view? There's three options, our court, the district court below, and the Title III court. Which of those three courts in your view has the legal authority to lift that stay? I believe that this court has the legal authority and has the authority to lift the stay retroactively because of- And what's your- In essence, the parties have stipulated- No, that's, what precedent would you cite that would allow a court other than the Title III court to lift the stay of the Title III court? I believe that counsel for the Commonwealth has given authority based on what type of circumstances there are as to whether the appeal- I don't know of any case that suggested a court other than the bankruptcy court that issues the automatic stay or the Title III court that's responsible for it. Can I do the lifting? So if that's right, I understand that there was a action before the Title III court to have the stay removed for purposes of this appeal. My understanding is that there was the only filing made to the Title III court sought a prospective lifting. There was nothing in it that refers to the standard for retroactive adjustment. And the text of the lifting of the stay order does not make clear that it was meant to retroactively lift that stay. So that's my concern is that we have a void order. I think that this could be done in a couple of ways. It could be- This is a question of law. This could be remanded to the district court or the Title III court for a retroactive- with instructions to retroactively lift the stay. The stay only- Do you need to hold this in advance while that happens? I think that this court could hold it in advance or instruct the courts to just remand it. In any event- Counsel, before you go on to your in any event, I understood that the stipulation permitted the Court of Appeals to decide this particular issue as to whether the limits imposed by the district court was in error. That does not resolve the question of what happens thereafter. And as to what happens thereafter, I had thought that the parties were either going to ask the district court to retroactively or the Title III court to either retroactively lift the stay or to permit it to proceed along the same lines as the state court action, which is you can do everything up to the point of execution of the judgment. But that issue was not itself before us as to the lifting of the stay. Ours is a very narrow issue pursuant to a stipulation. But it may be that we, as Judge Barron is suggesting, we don't even have authority to do that based nearly on a stipulation of the parties. Just following up on that before you answer, because I think it might just make it just adding to the point. It depends on what the content of the stipulation was. The stipulation was, as I read it, to allow the appeals to come to judgment. But that is unfortunately a somewhat ambiguous stipulation because the appeal can come to judgment in part by concluding that the stay strips the order of any effect. And the thing that concerns me, unless you tell me otherwise, I didn't see anything before the Title III court arguing for a retroactive lifting of the stay. So I think that my response to both your questions, Judge Barron, is essentially that we've stipulated to lift the stay to answer the legal question of whether the district court can refrain from applying rate adjustments to the periods of 2014, 15, and 16. Stipulation does not say that. The stipulation says, it is simply a stipulation to allow the appeals to come to judgment. There's no specificity about the issue or anything. Isn't that right? I mean, I don't remember the exact words. I believe that it was to resolve these appeals. Yes. And- To allow them to come to judgment. And that's just, they can come to judgment in a variety of ways. And did anybody argue to the Title III court to retroactively adjust the stay, retroactively lift it? We only have, what we have before the court now is that we have the stipulation that we currently, or that we entered into to lift the stay for the purposes of this appeal. We also have a pending appeal before the Title III court to lift the stay for all purposes of the litigation. Okay, lastly, I'll ask it just so you get the point that I'm trying to make. The stay had to be lifted prospectively to allow the appeal to go forward. If the stay is in place, we can't even hear the appeal. Right. But the prospective lifting of the stay for purposes of allowing the appeal to go forward does not mean that the stay was retroactively adjusted to allow the order at issue to be issued. Those are two separate things. And I don't see where there was an argument to the Title III court to retroactively lift the stay to permit the order that you're challenging to have been other than void. Because I didn't see any argument to the Title III court for a retroactive adjustment of the stay. I saw only a request for a prospective adjustment that would allow the appeal to go forward. Those are two separate things. Right, I understand the point. What our argument is that that doesn't matter. I think the court could still make the determination on the legal issue based on the 2010 forward-looking order and joining the Commonwealth to pay in accordance to the statutory formula. And that there, once there- A judge would pass and then I have a question. Thank you. I may simply contribute to the confusion with these questions, but I'll raise them anyhow. My understanding is that there is an agreement between the party. There's a desire to preserve some of the work that was done by the district court adopting the report of the magistrate as to certain calculations. Representation has been made that finally, after a lot of work on this sort of pre-basing approach, that that's been worked out. And the parties do not want to lose the benefit of that. And understanding that those determinations were made subsequent to the filing of the Title III petition, you're asking that we retroactively lift, ignore the stay, lift the stay, so that that work can be preserved. Is that correct? Is that your position? And okay, I think you've indicated that is your position. Now, what is it that's being preserved? What have the parties agreed to that you want to preserve? The parties have agreed to the rates that were calculated by the Commonwealth's experts, that those rates to adjust the payment rate, so the PPS rate adjustment, would apply forward-looking. So the calculations themselves of the rates. We've agreed there's no dispute. So, I mean, the Commonwealth says, with perspective forward-looking, they say that the effective date should be January 1, 2019. So if that were the determination, there is an agreement as to what the reimbursement rate should be going forward. That's what's been agreed to? Is that what you mean? So the Commonwealth does not dispute that they must pay the rates that were calculated in using the 2015 and 2016 data going forward, or applying the NEI. From when? Well, based on the- They only agreed to start paying it as of 2019. Right. That's correct. Yeah, so there's no agreement as to when those new rates kick in. No, they do not concede that the rates should kick in earlier so then that is the purpose of the appeal. Yeah. Okay, so the district court put the position the effective date should be January 1, 2017. You say, no, no, that's wrong, 2014. Aren't you a sort of alternative basis? I mean, it seems to me each side is sort of arguing that the decisions, putting aside this agreed upon, these numbers of determinations that were made below, in terms of the effective date, you want to argue, I think you're arguing there that the stay voids the order that January 1, 2017 determination that the district court made. That determination was made post May 3, 2017 absent some decision that that could be made retroactively. You're arguing that that order is void, aren't you? We aren't arguing that that order is void. We're arguing that there was an incorrect legal determination in that order. You're not arguing that it was void, is that correct? That's correct. Because if it's void, you can't win on appeal by getting us to set it at 2014. Right, right. So I have a practical question. The parties seem to want to get resolution of these issues. Perhaps they thought the inartfully worded stipulation permitted our court to at least hear these arguments. Judge Barron has suggested perhaps holding this appeal in abeyance while you go with the Commonwealth back to the Title III court and have it made perfectly clear the different prongs that you are relying on. One, that we can resolve these issues. Two, that the parts of the order that you like can in fact go into effect. Three, that once we decide the issues, then the calculations can go forward if you win and the calculations for can go forward if they win about the 2019. All right, I know the Title III court has its hands full and I'm sorry, in some ways, we keep sending work back to them. But are there any practical reasons why that course cannot be followed which would resolve any doubt about the propriety of our court's actions and the district court's actions? There are no practical reasons why that cannot be done. What I was going to say earlier is that the process of actually calculating the amounts due, the total amounts due, has been on hold and it's still on hold pursuant to the stay. Answering this question will tell us how to move forward and how to calculate those amounts. We believe that it's in this court's authority to make the determination under the stipulation that we have before the Title III court, but if the court disagrees with that conclusion, the parties could go back to the Title III court and ask for that and this court could hold the decision. All right, so one of the admirable things about this case is that you and the Commonwealth attorneys have been working together to see that some payments, in fact, are made despite all of your disputes. I would like you to discuss with your opponent this possibility of us holding this appeal in abeyance. You can force us into a ruling on it or if you and the Commonwealth agree, you could and in some ways might expedite matters by reaching an agreement to be filed with us it's not that you'd lose the benefit of the arguments you've made, it's just that our appeal, your appeal to us would be held in abeyance while you get the Title III court to make it clear that the coast is clear and that all of these orders that you want entered. So do you think 10 days is enough time for you and the Commonwealth to discuss this and tell our court whether such an agreement can be reached or not? So I speak for our clients that I think that this workable for us. There is Co-Appellants Council who is up as well as Commonwealth Council that would have to answer in terms of what they believe is feasible. Very good. Don't outstrip your own authority. Thank you. Are there further questions that the panel has for you? No. Thank you, Ms. Bacon. We'll hear from the other attorneys now. Thank you. Thank you. Attorney Graham. Good morning, may it please the court. I'm Robert Graham for Appellants in 17-1731. I had, Ms. Bacon and I had divided up the oral arguments so that I would have three minutes, which I had hoped to reserve for rebuttal, but it sounds like it's been taken me. I don't know how you want to proceed at this point. If you have... Well, you heard the question I just put to your sister, is a 10 day period long enough for you to consult with your client, the Commonwealth and get back to us? Yeah, yes. That should be enough time. I suppose I would want to add a couple of things, just to stress the importance of the difference between the fourth quarter 2014 and the 2017 effective date for the new rates, because just by way of background, there have been interim payments under the 2010 injunction, but those are based on an average of a 12 year period. So that's a three-year period that is now... Right, right. 2006 to 2009. If we don't have the effect, the updated rates with the expanded scope of services, and there is, at least as of 2011, there was a substantial explosion in the scope of services for the health centers because of expand after hours services and additional electronic medical records, things like that. Services expanded, expenses expanded. So certainly the period, the change in scope predates 2014. If we do not have the updated rates applied as of 2014, when we go through and do our reconciliation, there's a risk that we will not only get underpaid, but that the Commonwealth will try to claw back any payments that they deem to be excessive for that period. Okay, got it. Well, that's great incentive. Should the Title III Court be the subject of a petition? It's great incentive on everyone's part to move very quickly. Right, and then the next issue is going to be the discharge question. Because if these debts are dischargeable prior to the date of the petition filing in the PROMESA matter, all of this is going to be moved. So that question, are the debts dischargeable, that doesn't depend upon the amount of the debt, is that correct? Everything that we're talking about now goes to that question, the amount of the debt, right? How much the Commonwealth owes. That's correct. Now, in the Title III Court, the issues that we've been talking about now, the amount of the debt, effective dates, computation, those would not be appropriate issues to present to the Title III Court, is that correct? That would not be an appropriate form to work any of that out, is that right? That's correct. Okay. Oh, go ahead. Please go ahead, Judge Merrill. The only way in which, you tell me if I'm right about this, although the Title III Court would not be responsible for resolving it, the Title III Court's decision about retroactive adjustment is probably going to be somewhat based on an assessment of what the consequences for Puerto Rico would be of having to pay more, because there's other creditors who have an interest in it. Now, that may not be dispositive, but that's one reason why I am wary of stepping over the authority of the Title III Court here, precisely because it's about how much money Puerto Rico has to pay, and the Title III Court is responsible, generally, for figuring out that question. So, before it lists its stay, it's probably gonna wanna know, well, if I make the retroactive adjustment, what's that mean for how much money you can draw on Puerto Rico that other creditors can't claim? I do not disagree. Okay. Well, counsel, as I understand it, a confirmation plan has been presented to the Title III Court, and I thought the Commonwealth has already indicated how much they think they should be required to pay on the existing debtors. There was a 3.9% figure. What does that mean, that 3.9% figure, if you know what I'm referring to? I suspect that you were referring to the payout to the unsecured creditors. Does that ring a bell? Well, your clients are supposed to be treated as unsecured creditors, right? It all depends. I have to tell you, that's probably the best answer anybody can give you because the confirmation plan is very fluid, and there are ongoing discussions among various creditor groups, and how the plan reads now is highly unlikely to read six, four, 10 months down the road. I guess my question is, maybe it's somewhat of a practical question. I mean, all these issues we're talking about, I mean, if they can be simply effect-rendered moot, irrelevant, superseded, whatever, by the Commonwealth's argument that this debt is dischargeable, why are we fussing with all this stuff? Why isn't that a foundational question that needs to be resolved? And we are trying to resolve that in the PROMESA Court. There are pending adversary actions arguing that these debts are non-dischargeable. Chiefly, actually, because some of the language from the opinion in the migrant health case, there was a determination there that stay and dischargeability are completely different concepts, and the fact that there's language in PROMESA that says you are not discharged of compliance obligations doesn't mean that those compliance obligations are not stayed. To follow up on Judge Lopez's question about confirmation plans, I thought it was possible that the Title III Court could lift stays to let all of these questions be resolved, but continue not to allow execution on any judgments until these issues are resolved, the amount of the judgment is determined, and then it will review that in the context of a confirmation plan, that that choice is open to the Title III Court. Our concerns, actually, are predecessor concerns about whether we have the authority to resolve those portion of the questions that are present in these appeals, right? Right, and that I think you made clear in your questioning of Ms. Bacon. Okay, now, Mr. Graham, if this is held in abeyance, this is your chance to make any other arguments as to the merits, and I certainly don't want to deprive you of that chance, so do you have other things you want to say? I think that Ms. Bacon has quitted herself very well, so I do not have anything to add. Judge Barron, okay. I'd like to ask, there's a lawnmower outside that I'm trying to prevent you from hearing, but the one question that I had that I asked Ms. Bacon about, I think I understood her answer, but I just wanted to follow up to make sure I have it right. The data that was before the district court for the payment rate was 2015-2016 data, not 2014 data, is that right? That's correct, and the reason was that before the rate-setting process moved forward, there was a ruling by the court as to what the effective date would be, and that sort of dictated what date would get submitted. The way I read the opposition brief to you here was to say, well, how can you complain about an order that refused to set the payment date as 2014 when you only gave 2015 and 2016 data? Now, that would concern me if the district court was misled into thinking, by the arguments that were made to it, that you were trying to get a 2014 date based on 2015-2016 data. The way I understand your argument now is you were saying, although there's 2015-2016 data, we want the 2014 date set, and then we'll give you the data for that when we get it. But was that made clear to the district court? In other words, it's clear in your reply brief, that's what you're now saying, but was it clear to the district court? Because that's the relevant thing for me. Well, what happened in the district court is there's carts and horses here, and the horse, what is driving this, is a determination of what the effective date should be, not the data that was made available. So we had a report and recommendation from the special master that set the date at January 2017, adopted by the district court. We filed this appeal, but then, while this appeal is pending, we have to continue to do the work in the district court. So based on that order, we supplied the 2015-2016 data that would make for an effective date of 2017. If we get a reversal here, then we can do either of the two things that Ms. Bacon mentioned. One is to reverse MEI, the Medicare Economic Index, which is the annual multiplier, which is actually what happened in the state court action for some of the centers. Some of this, as Ms. Bacon mentioned, some centers had base years of 99 and 2000, others had 2006 and 2007. Since the state court case covered periods prior to 2006 and 2007, what the special master in that case did was took a multiplier to reduce the rate based on 2006 and 2007 data. We could do that here, or we could simply provide the same. We have an agreement as to what should go into the rate setting process, what information is relevant. It's a limited universe. So, I mean, it should not take a substantial amount of time to come to an agreement on what those rates should be based on 2012 and 2013 to get to a 2014 rate. Thank you. Thank you very much. And that's what I have. Thank you. Okay. We'll hear from the Commonwealth Council. Attorney Lugo, if you could please. Yes, ma'am. Hi, I'm APS, the court. Good morning. I'm Attorney Carlos Lugo on behalf of the Commonwealth. I will go directly to address the jurisdictional question that has been raised here by the court. Well, before you do, before you give us any argument on that, a suggestion has been given to counsel that you pursue before the Title III Court motions that would clarify that we have the ability to decide this appeal. And both of your opposing counsel have said a 10-day period is enough for them to consult with their clients and talk with you and report back. So, is a 10-day period for you to report back to us on those issues as I have abundantly described sufficient? It might be a little short for me because not only I have to consult with the Commonwealth, we have to consult also with the Supervisory Board. And I have no idea how much time that can take, but I think- You know, I'm sorry. The most I will give you is two weeks and you will have to see that that happens. This lawsuit is about delay in payments. And this suggestion is not to be used for further delay in getting these issues resolved. You may represent that to your clients. Okay. Yeah, so we will be getting a written order stating that so that I can, that will be for me to forward to the Commonwealth. I'll do that immediately. No, no, we may get a written order out, but in the meantime, you are under the order of this court to respond within 14 days to the request that has been made by the court to you. Okay, so that I have it clear. The request is for the parties to state to the court whether they agree that to request the Title III court to make a clear, make a clear statement that the First Circuit can decide all the issues on appeal. But- That is the bare minimum. I outlined four different issues. That's for you and your opponents to talk about. But the idea is that we hold the appeal in abeyance while you get from the Title III court a statement that there is no doubt we have jurisdiction to decide the issues presented in this appeal. Now, I'm going to make this subject to any comments from my colleagues. But the point I think for me that I would like you to emphasize when you report back to us is, are you going to be in agreement to seek clarification or to request the Title III court to retroactively lift the stay so that the orders that are issued in this appeal from the district court are valid orders rather than void orders that postdated the stay? Was that clear? Okay, it would be a request that the Title III court retroactively, I mean, that the parties request the Title III court or to get the Title III court to retroactively lift the stay so that the district court has jurisdiction to resolve all the questions in the appeal. Key thing is that they retroactively lift the stay so that the orders that are on appeal here from the district court are no longer orders that postdate the stay. Because you've represented to us that all of those orders postdate the stay and absent retroactive adjustment are void, correct? Yes, yes, we are. Yes, so now I don't know if you intend to agree to seek the Title III court retroactively adjusting the stay so that, lifting the stay so that they're no longer void. But what Judge Lynch is telling you that the court is ordering you to report back on is whether you have reached agreement about going back to the Title III court to seek that retroactive adjustment either by requesting it newly or clarifying the prior stipulation to make it clear that that retroactive lifting occurred. So in a sense, there's a part A and a part B here. As Judge Barron has suggested, removing any question about whether the district court orders were void because of the stay is necessary for the exercise of our jurisdiction. The other part which I have been emphasizing is in light of some ambiguity about this stipulation, whether it is clear that this court may proceed to resolve the issues presented in this appeal. And Judge Lopez, do you have anything you want to add? Well, thank you, I think you both covered it well. Thank you. Okay, well, I will go and I will consult that with the Commonwealth and with brother and sister counsel and comply with the order of the court. It is our understanding, however, I mean, I'm going to the jurisdictional question. And the question, particularly the question presented today by the court. The retroactive lifting of the stay is an extraordinary remedy. Sorry. Sorry. It's an extraordinary remedy. Counsel, you can choose to present that argument to us, but isn't an argument about retroactive relief better brought before the Title III court? And isn't your time better spent on the merits of the disputes before us? Okay, sure. Can I just want one clarification on that though? Just tell me, aside from the order that we've given you about reporting back to us about whether you're going to ask us to hold us in abeyance so you can get further developments in the Title III court. Setting that aside for the moment, your present position is what as to the status of the orders of the district court that are on appeal? Well, the order approving the PPS, the new PPS rates, which were the ones that were negotiated by the parties for months. And when they reach an agreement before the special master and approved by the district court, that particular order, which I understand is January 22nd, 2019. That particular order can be retroactively, I mean, it should be valid, the state should be retroactively listed to include that order because it will be completely inequitable in our view. Yeah, but you're rendering... It is important, is the Commonwealth view that our court has the authority to do the retroactive lifting of the state? Well, I think that when the parties filed the stipulation before the Title III court... Oh, so you're relying on a stipulation there. Yes, but the stipulation is not clear as to that. I mean, I think it's clear now that the stipulation did not clearly, it granted, it listed the state to grant the court jurisdiction to resolve the issues, but it didn't, but the question of extent of retroactively listing the state, I think that power remained in the Title III court. I mean, it was left out of the stipulation. Puerto Rico's position then is if that's true, at present, all of the orders are void. All of them. The only one that we are saying that should be, that the state should be retroactively listed, I mean, we were assuming at the time that this court could do it. Now, I'm clear that it's not, but our position was that if the particular orders appeal from, in this case... Unless we can do it, all of them are void in your view at present. Yeah. Okay, that's all I have on jurisdiction. Okay. Regarding the merits, I would, this is basically the same issue, I'll discuss the question of the, the appellants, the SQSCs, they failed to take into account that this case is an injunction. And the controversy that the court has before it is an injunction to make the Commonwealth comply eventually with the Medicaid statute. But how is it done? The district court had a certain degree of discretion as to that. And these orders, both the objections or the motion that what the appellants seek in this case and what we seek in case 19-1336 is to modify district court orders that in their case that the, I mean, modify the district court order that set the 2070, the PBS rates, the effective date for 2017. They want to put it back to the last quarter of 2014. We want to put it forward to January, 2019. And- Counsel, on the merits, this seems to come down to the language of the Medicaid statute requiring 100% reimbursement once you've worked out all the issues about formula and what triggers the formula and all of that. But your argument seems to be, despite the flat statement in the Medicaid statute nonetheless, there is discretion in the district court. Now that is a separate issue from what happens ultimately in the Title III proceeding as to what happens as to discharges, what happens as to payment obligations. But am I correct that that is the core of your merits-based argument before us? Yes, and that this question should be examined on the Rule 60B, both on their side and on our side and to measure the equities. So how does Rule 60B change the language of the Medicaid statute? If the Medicaid statute provides no discretion, how does Rule 60B somehow modify the congressional command that there be no discretion? Well, the Rule 60B cannot modify the Medicaid statute. I mean, I think that's clear as well. But one thing is, if this had been, for example, a case in which the federal government is enforcing this, we wouldn't be even here, but it will be a different question because they will be enforcing that. Here, they're trying to enforce it, but it's through a Section 1993 suit to obtain damages. This is what they're- I'm sorry. I'm not sure I'm following that distinction. If for private healthcare centers that get reimbursed under the Medicaid statute and under your state plan, there is a 100% payment obligation, how does the fact that it's not the federal government bringing this suit, why is that important? Well, the matter is, I understand you. I see your point, I mean, your question. I see, and it is true that the law says what it says and the court cannot change the law. But how the law applies in a certain case, in, for example, the party that is, in which the defendant may not be able, for some extraordinary reasons, may not be able to comply with the statute at a certain point in time. Okay, okay, and aren't those arguments to be made to the Title III court? Yes, yes. Well, I thought, maybe I misunderstood you. I thought if the, I'm a little confused when you said the nature of the remedy was damages, but that they were seeing, I thought they were seeing equitable relief because they got an injunction. Yes, it is an injunction. Yes, so wouldn't the argument be that, this is what I thought you were arguing. Under Section 1983, they sought equitable relief. Equitable relief can be flexible. So the question is, what kind of injunctive relief should they get and how much can they take account of the fact that in getting that injunction, you're dealing with a party that's challenged with respect to payment through a whole bunch of complicated reasons. And in that instance, maybe you can't get the injunctive relief, even if there was some other type of relief that you might get. But as long as you want injunctive relief, that's gonna be constant with the demands of equity. We review the relief given and the scope of the injunction for abuse of discretion. This is a modification of it. That's reviewed for abuse of discretion. Now, maybe there's a flaw in that in the sense that the nature of the injunctive relief requested shouldn't turn on those kinds of considerations. But I took it that's your argument. Yeah, it's my argument. And also, this court has in other contexts in this same case, in prior appeals, it has alluded to and has applied Rule 10, Rule 65. And for example, in the Belaval case in 2006, that would be 465, F-33, it was stated that the district court could, on remand, could consider whether to modify the preliminary injunction pursuant to Rule 60. And in Concilio de Salud Integral, which is the appeal decided in 2008, 551, Chapter 10, the court stated, quoted Belaval, and stated that the district court can modify an injunction pursuant to Rule 65. So, insofar that we're talking about an injunction, it can be modified under Rule 65 as long as the Commonwealth complies with the standard. Counsel, I want to observe, I mean, if we get to the kind of equitable analysis that you're suggesting, there's something that frankly rings rather hollow in the Commonwealth's argument. I mean, these medical centers, I mean, they're serving the poor population of Puerto Rico, which has, seems to be more and more dependent upon the services that are provided here. The ability of these centers to do their job requires proper funding. I mean, sort of this notion that you just have the Commonwealth, yeah, you have financial problems, for sure, but in terms of citing the plight, financial plight of Puerto Rico, sort of outweighing the plight of individuals who depend upon these medical centers for services strikes me as frankly not a very compelling argument. I'm simply saying that to the extent you think there is some advantage to the Commonwealth in asking for the most forgiving effective date, that there's some advantage in the equities, I frankly think you're quite misguided given the population that's being served by these medical centers. Now, we may not get to that point, but I do have to say that I find that a very unpersuasive argument. Well, Your Honor, I respectfully disagree. I understand your argument, your position, sorry, and it's not an argument, but I respectfully disagree in the sense that the government, this population has many other needs outside of health that has to be taken, has to be tended, for example, education, providing social services, providing programs for employment, very many different programs, we have to strike a balance. And in so far, and obviously the government, all governments are in the position that we have X amount of money to do something and to run the entire government and to provide services to the people. And sometimes we have to take away from certain spots and have a priority in other spots. This is aggravated in this case because the Commonwealth is bankrupt. And I'm not going to go into why that happened because it's a very long story, but this is what we have now is that we have to strike a balance between all the different services we have to provide to that population and the services that the government has to provide to the population at large. For example, security, security, courts, all the different services that our government provides. So yes, in a sense, I agree that these services and these centers provide to indigent people are essential. And that's why the Commonwealth has been continuing to pay, to make payments and continuing to try to reach an agreement with the FQHC. You make a good point, counsel, but I think perhaps those kinds of judgments sort of balancing how limited resources should be allocated, that sounds like probably something that the Title III Court is going to have to work out whether it has to make a confirmation determination. I'm not sure that we're the proper court to be making the kind of arguments. I don't know that we can take that sort of holistic view that you're urging. That seems to me a more appropriate argument to be made in the Title III Court. Those are the kind of arguments that you're gonna be making in defense of whatever your confirmation plan is, correct? Yes. Yes. I mean, those are arguments for the Title III Court, of course, but in this case- Thank you. I believe this point has been thoroughly made. Is there anything else you want to add as to the merits, should we eventually get to the merits? Well, there is one more thing about brother counsel for, well, it was mentioned in the appellant's argument about the procedures that were followed by the special master before he entered the report and recommendations, and there was an agreement on the PPS rates. Outside of the argument, and all that is void for this day, outside of that, they're saying one specific argument is that there's tolerance of a 3% discrepancy in the determination of the number of visits, and particularly health pro med is saying that insofar as that 3% margin may affect and maybe may go against them, they won't be completely paid. And that argument, I'm not saying that it's not, it is a feasible argument to make, but it is speculative at this stage because we don't know until the special master determines the number of visits. We cannot know whether there's a percentage that disfavors the appellants. It may be where we will be that it disfavors the commonwealth or that it's completely neutral. So I would like to end with that and submit the case, and we will file a motion with the court when the parties reach an agreement as to the matter that you have asked us to do. Thank you very much. I believe that there is a two minute rebuttal which has been reserved. Thank you. I just wanted to respond to a couple points, and I'm not sure what, if the court would like for the arguments to be made to the Title III court, but to the extent that we're dealing with the mayors here, I think what counsel said, this court cannot amend the Medicaid statute, and that's essentially what they're asking to do with the court is not to follow the statutory formula. So in addition to all of the arguments that we've made before, what the commonwealth is asking to do is change the appropriation. And so the appropriation for Medicaid is much more than just giving federal dollars. The appropriation requires that the commonwealth follow certain terms and conditions, which includes paying our clients under the statutory formula. And to the extent that the commonwealth fails to do that, it is a change in the statute. Let me just ask this question about it, which is, what is the earliest, I know there's an agreement that no one's gonna go back before 2014. If there wasn't that agreement, what would be the date you could go back to? For our clients, it would be 2010, essentially. In terms of the rate change. Is that your question? Yeah, are there other clients that could even go back earlier than that? Yes. What's the earliest? Two of the plaintiffs, I believe there was an injunction in 2004 for those plaintiffs. I guess my only question is whether there is any flexibility for a district court in a situation in which there's 10 years have passed since that initial injunction to say, okay, it's true that you're making arguments about why in theory we could go back to 2010, but as you've agreed, you're not going back to 2010, you're willing to stop at 2014. And some of the same logic that led you to not go back all the way to 2010 as an equitable matter provides a basis for them saying, we're gonna just start this at 2017, just because of the passage of time and how much water's under the bridge, et cetera. Could you just respond to that part of it? Because to me, that seemed what the district court was getting at in picking 2017. It wasn't saying I'm gonna just disregard the Medicaid Act. I'm stuck in a ongoing long-term process and I'm trying to manage this. And so 2017 seems like a reasonable start date. So I just wanna clarify that we're talking about the rate and that our clients have claims going all the way back in the state court to 1997. And our response to the district court's desire to start in 2017 is that the court doesn't have authority to do that. It would be a violation of the appropriation. Congress set the standards of how Medicaid dollars would be spent, federal Medicaid dollars would be spent and what the Commonwealth had to do to comply with that. And so if the Commonwealth wants to be relieved of the obligation to adjust the rates in accordance with the statute, it would have to be taken up with Congress, not the court. I would have thought that the fact that you were willing to compromise your claim and give up prior year's reimbursement to the extent equity is involved here at all, that that counts in your favor. And against the Commonwealth's request on equitable grounds to avoid payment even further, as opposed to establishing that equitable considerations can override the statutory concern. The reason that we are not seeking to pass them out is really evidentiary issues as opposed to equitable issues. We don't have the authority to do that. So the question, there's no question in terms of the facts from since 1999 and 2000 or 2006 and 2007, when the rates were based, there have been changes in scope. There's no dispute from the Commonwealth that prior to 2014, we've had changes in scope of services that warrant adjustments. If we were to go back, we would have to prove for each and every year. Whatever your reasons. Right. Okay. Right. Thank you. So it's not an equitable issue. So are there any further questions from my colleagues? No. No. Okay, thank you very much, counsel.